UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

v.                                                                         **OPINION AND ORDER**

DESHAWN THOMAS,                                             20-CR-00626-4 (PMH)

                                Defendant.
-----------------------------------------------------------X

PHILIP M. HALPERN, United States District Judge:

      Pending presently before the Court is Deshawn Thomas's ("Defendant") motion to withdraw his guilty plea. Based upon the parties' written submissions and for the reasons set forth below, Defendant's motion is DENIED.

## BACKGROUND

      Defendant, in connection with his involvement in a "Bloods" gang known as the Untouchable Gorilla Stone Nation ("Gorilla Stone"), was charged with five counts in the operative twenty-five count Superseding Indictment (S-6) filed on November 8, 2021 (the "Indictment"). The Indictment charges Gorilla Stone members, including Defendant, with selling narcotics, carrying firearms in connection with their drug sales, and acts of violence against rival gang members. Defendant was charged with: (i) racketeering conspiracy in violation of 18 U.S.C. § 1962(d) ("Count One"); (ii) narcotics conspiracy in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 ("Count Sixteen"); (iii) possession and use of a firearm in connection with a narcotics conspiracy in violation of 18 U.S.C. § 924(c) ("Count Seventeen"); (iv) assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C. §§ 1959(a)(3) and 2 ("Count Twenty-Four"); and (v) use of a firearm that was brandished and discharged in furtherance of the crime of violence charged in Count Twenty-Four, in violation of 18 U.S.C. §§ 924(c) and 2 ("Count Twenty-Five"). (Doc. 245).

On April 27, 2022, Defendant appeared before this Court and pled guilty to Count One and Count Seventeen pursuant a written plea agreement dated April 25, 2022 (the "Plea Agreement"). (Doc. 419, "Tr."). Under the terms of the Plea Agreement, which Defendant signed on April 27, 2022 (*id*. at 18-19), among other things, the Government agreed to accept a guilty plea allocution from Defendant to conspiring to conduct and participate in the conduct of the affairs of a criminal enterprise through a pattern of racketeering activity, from at least in or about 2004 up to and including in or about December 2020, in violation of 18 U.S.C. § 1962(d); and with knowingly using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime, namely the narcotics conspiracy charged in Count Sixteen, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. (*Id*. at 9).

The Court conducted a thorough and detailed allocution of Defendant after placing him under oath. (*Id*. at 3-6). Among other things, Defendant affirmed that he was 35 years old; that he had earned his GED; that in the past 24 hours, he had not consumed any drugs, alcohol, pills, or medicine; and that his mind was clear and that he understood what was happening. (*Id*. at 4-5). Defendant confirmed that he had "enough time and opportunity" to discuss the case with his attorney and that he was satisfied with his attorney's representation of him. (*Id*. at 5). The Government and Defendant's counsel, John Wallenstein, Esq. ("First Counsel"), likewise represented that they had no doubts as to Defendant's competence to plead guilty. (*Id*.). Accordingly, the Court found that, on the basis of Defendant's responses to the Court's questions, its observations of his demeanor, and the views of counsel, Defendant was fully competent to enter an informed plea. (*Id*. at 5-6).

The Court, at the April 27, 2022 hearing, conducted a thorough colloquy pursuant to Federal Rule of Criminal Procedure 11 to determine whether the plea was knowing and voluntary and whether there was a factual basis for the plea. (*See generally id*.). The Court confirmed that Defendant understood the rights he was giving up by pleading guilty, and that he would be sentenced on the basis of his guilty plea. (*Id*. at 6-9). Defendant acknowledged that he understood he was giving up those rights, except for his right to counsel. (*Id*.). The Government then, at the Court's direction, set forth the elements of the offenses to which Defendant was pleading guilty. (*Id*. at 11-13). The Court advised Defendant of the maximum penalties he faced on each count and Defendant confirmed his understanding, including that he faced a five-year mandatory minimum sentence. (*Id*. at 13-15).

The Court confirmed that Defendant had read the Plea Agreement, had discussed "every aspect of it" with First Counsel, and understood it fully. (*Id*. at 19). Defendant swore that apart from the Plea Agreement, no one had made him any promises or used any threats, force, or coercion to induce him to plead guilty or to enter into the plea agreement. (*Id*. at 19-20). The Court then reviewed the stipulated sentencing range in the Plea Agreement and confirmed that Defendant understood the parties' agreement with respect to the calculation of his sentencing range under the Guidelines. (*Id*. at 20-21). After advising Defendant of the charges against him, the possible penalties he faced, and the rights he was giving up, the Court confirmed that it was still Defendant's intention to plead guilty to Count One and Count Seventeen. (*Id*. at 23). When the Court then asked Defendant to formally set forth his plea as to Count One, Defendant asked, "[c]an we have a moment?" to which the Court responded, "[y]ou sure may." (*Id*. at 24). Following a pause, Defendant began to set forth his plea on the record. (*Id*.). The Court

interjected to confirm that Defendant had enough time to talk to First Counsel. (*Id*.). The Court then had the following exchange with Defendant:

> THE COURT: It's important to me that you understand I am not going to take a guilty plea from you unless I know and believe you are doing so in a knowing and voluntary way; and so I am not willing to take a step forward here today unless you tell me -- I can understand it being emotional, and you have family here, and things are on your mind. But if you are prepared to go forward, that's one thing. If you are not prepared to go forward, I am going to stop, and, you know, we will figure out what's going to happen next. I assume Mr. Logarajah will tell me what he wants to do next in terms of getting ready for trial and whatever else we are going to do. But I am not here to force you to plead guilty. Am I making myself clear?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: It's very important to me. I'm not your lawyer. I am your judge, but in discharging my responsibilities here, I need to be sure that you are doing this in a knowing and voluntary way; and if for some reason that's not what's happening here, then I am going to stop. Not because of you or your lawyer or Mr. Logarajah because I am going to stop because I am not going to enter a guilty plea here that is not knowing and voluntary. Am I making myself as clear to you as I can?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. So do you want to take another minute and talk to Mr. Wallenstein or are you prepared to go forward or are you prepared to tell me, you know what, Judge, I am not going to go forward? Is that -- do you need a minute to talk to Mr. Wallenstein some more?
>
> THE DEFENDANT: One moment.
>
> (Pause)
>
> MR. WALLENSTEIN: Judge, may I have a moment to speak with Mr. Logarajah?
>
> THE COURT: Certainly, counsel.
>
> (Pause)

4

>MR. WALLENSTEIN: We are ready, Judge.
>
>THE COURT: All right. The record should reflect we have given Mr. Thomas about 12, 15 minutes to talk to his counsel, Mr. Wallenstein. Mr. Thomas, are you ready to go forward or not?
>
>THE DEFENDANT: Yes, I am.

(*Id*. at 24-25).

Defendant then formally set forth his plea of guilty as to Count One and Count Seventeen, and confirmed that he was pleading guilty voluntarily and of his own free will. (*Id*. at 26). The Government was asked to summarize its proof to ensure there was an adequate factual basis to support Defendant's plea. (*Id*. at 26). The Government proffered what the evidence at trial would consist of with respect to Count One and Count Seventeen and Defendant confirmed that the Government's factual proffer was substantially accurate. (*Id*. at 27-29).

Before Defendant began to describe the conduct that made him believe he was guilty of the charges to which he had just pled guilty, the Court noted that Defendant was looking at a piece of paper, and confirmed that it was a piece of paper that Defendant worked on with First Counsel, but that it was Defendant's words and not First Counsel's words. (*Id*. at 29). Defendant then made a factual allocution and explained that he was a member of Gorilla Stone from 2004 to 2020; that he was part of the enterprise that was involved in narcotics distribution, gun trafficking, and other crimes; that he participated in two acts in furtherance of the group, including gun trafficking and drug distribution; that he was a member of a group involved in assaults in connection with the Gorilla Stone enterprise; and that in connection therewith, he carried firearms. (*Id*. at 29). Defendant also confirmed, in response to questions from the Court, that his involvement in Gorilla Stone caused him to cross state lines on occasion, including into Florida; that he participated directly in the affairs of Gorilla Stone; that he agreed with other

5

Gorilla Stone members to violate the laws of the United States, including drug trafficking, gun possession, and the use of firearms in connection with drug trafficking; that, together with other Gorilla Stone members, he sold or possessed with intent to sell between five and fifteen kilograms of cocaine; that on July 5, 2020, he was present for and aware of the fact that other Gorilla Stone members shot at a rival gang member; and that during the time he was a member of Gorilla Stone he carried a firearm in furtherance of his drug trafficking. (*Id*. at 30-33).

The Court found that Defendant had voluntarily waived his rights, with an understanding of the consequences of his plea; that he had entered his plea knowingly and voluntarily; and that his plea was supported by an independent factual basis. (*Id*. at 37-38). The Court, accordingly, accepted the guilty plea. (*Id*. at 38). First Counsel then withdrew Defendant's pending suppression motion and the motions of the co-defendants to which he had joined, in light of Defendant's entry of a guilty plea. (*Id*. at 40).

Defendant filed *pro se*, on August 31, 2022, a handwritten, signed document entitled "Affidavit of Support to Withdraw Plea Agreement." (Doc. 472). Defendant sought to withdraw his guilty plea on the grounds it was not made knowingly, voluntarily, or intelligently, and requested to proceed to motion practice "and trial if necessary." (*Id*. at 11). Defendant argued, in support of his request, that: (i) First Counsel "failed to obtain Brady materials and Jencks"; (ii) that First Counsel, "against the Defendant's repeated requests," withdrew the motion to suppress; (iii) that the statements Defendant read in Court were prepared solely by First Counsel and Defendant was told to read it; (iv) that Defendant "was not advised properly as to the total range of punishment for each offense"; (v) that Defendant was advised by First Counsel that his co-defendant pled guilty to murder and "the statement of facts has due implication of [his] involvement and was sufficient for [his] conviction," but that after the hearing, First Counsel

6

advised that the co-defendant's murder charges were dismissed by the Government; (vi) that Defendant's plea was coerced by First Counsel and he "was not given adequate time or counsel to understand the process"; and (vii) that before the hearing, First Counsel told him that the Government stated that if Defendant continued to request a suppression hearing, he "will bury you and your family" and that First Counsel stated "we have lunch together and I don't want to do this." (*See generally, id.*).

First Counsel, on September 5, 2022, sought to withdraw from the representation in light of the allegations made in Defendant's *pro se* filing. (Doc. 473). On September 22, 2022, the Court conducted a hearing attended by Defendant, First Counsel, and the Government, with stand-by replacement counsel, Karloff Commissiong, Esq., available by telephone. (Sept. 22, 2022 Min. Entry). The Court, after hearing from First Counsel and considering the required factors, relieved First Counsel and appointed Mr. Commissiong as replacement counsel for Defendant. (*Id.*). The Court permitted Mr. Commissiong to supplement Defendant's *pro se* motion to withdraw his plea, and set a briefing schedule for the motion. (Doc. 505). The motion was filed on November 23, 2022. (Doc. 518). Defendant argues therein that the guilty plea was not entered knowingly and voluntarily because First Counsel told Defendant during the plea hearing that the Government had said it would "bury" Defendant if he proceeded to trial; that Defendant was coerced into pleading guilty because his family, in attendance at the guilty plea proceeding, was emotional; and that First Counsel was ineffective in failing to review the Plea Agreement with Defendant. (*Id.*). The Government filed its opposition brief on December 13, 2022 (Doc. 531), and no reply papers were filed.

## STANDARD OF REVIEW

A defendant may withdraw a guilty plea after a court accepts the plea but before the imposition of the sentence if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "While this standard implies that motions to withdraw prior to sentence should be liberally granted, a defendant who seeks to withdraw his plea bears the burden of satisfying the trial judge that there are valid grounds for withdrawal." *United States v. Doe*, 537 F.3d 204, 210 (2d Cir. 2008) (internal quotation marks omitted). "That burden has been described by the Second Circuit as 'stringent.'" *United States v. Grant*, No. 10-CR-00431, 2014 WL 4828469, at *7 (S.D.N.Y. Sept. 25, 2014) (quoting *United States v. Schmidt*, 373 F.3d 100, 102 (2d Cir. 2004)). District courts, in evaluating whether a defendant has met this stringent burden, should consider: "(1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant has asserted a claim of legal innocence; and (3) whether the government would be prejudiced by a withdrawal of the plea." *Doe*, 537 F.3d at 210.

"A showing of ineffective assistance of counsel may 'undermine the voluntary and intelligent nature of a defendant's decision to plead guilty,' thereby entitling the defendant to withdraw his guilty plea." *United States v. Robinson*, No. 08-CR-00976, 2015 WL 8073757, at *5 (S.D.N.Y. Dec. 4, 2015) (citing *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) alterations omitted)). Such a claim is evaluated under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* standard requires a defendant to first "show that counsel's performance was deficient," in that it fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 687-90. "Second, the defendant must show that the deficient performance prejudiced the defense," meaning "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at

8

687, 694. There is a "strong presumption" that counsel's conduct "falls within the wide range of reasonable professional assistance," *id*. at 689, "and it is [the defendant's] burden to demonstrate 'that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy,'" *United States v. Yeagley*, No. 08-CR-00707, 2017 WL 76903, at *7 (S.D.N.Y. Jan. 3, 2017) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)).

The Second Circuit has stated that, "[w]here defendant's specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty . . . the issue is whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea." *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992) (internal quotation marks and citations omitted). To show prejudice sufficient to allow a defendant to withdraw his plea, "the defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

"A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997). Indeed, "[a] motion to withdraw a guilty plea may be denied without a hearing where the defendant's allegations 'merely contradict the record,' are 'inherently incredible,' or are 'simply conclusory.'" *Id*. (quoting *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992)).

## ANALYSIS

Defendant fails to meet the stringent burden of demonstrating valid grounds for withdrawal of his guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(B). First, the legal innocence factor weighs against Defendant's motion. Neither Defendant's *pro se* motion nor the supplement filed through his replacement counsel address this factor. The legal innocence factor requires the Court be "convinced that there are legally cognizable defenses to the crime charged to exculpate the defendant." *United States v. Fernandez*, 734 F. Supp. 599, 604 (S.D.N.Y. 1990). Defendant does not claim factual innocence of the crimes to which he pled guilty; he signed the Plea Agreement stating that he "is in fact guilty"; he stated under oath that he was pleading guilty because he was in fact guilty; and he allocuted to the elements of Count One and Count Seventeen. Defendant does not attempt to make any showing of legal innocence, and these facts militate against withdrawal of the plea. *See United States v. Barnes*, 2008 WL 2156739, at *1 (S.D.N.Y. May 21, 2008) ("[T]he legal innocence factor weighs against Defendant's motion, because he has not asserted that he is legally innocent of the crime for which he pleaded guilty.").

Second, the elapsed time factor also militates against withdrawal of plea. Defendant waited approximately four months before seeking to withdraw his guilty. "Four months is simply too long a period to support a claim that the plea was made in haste or confusion." *Fernandez*, 734 F. Supp. at 603; *United States v. Dean*, 591 F. App'x 11, 14 (2d Cir. 2014) ("[Defendant's] motion to withdraw his plea was further undercut by the fact that he did not make the motion until four months after the plea."). Courts in this Circuit have held that delays of periods of time much shorter than this weigh against motions to withdraw. *See, e.g., United States v. Taylor*, 242 F.3d 369, 2000 WL 1786338, at *4 (2d Cir. 2000) (five weeks); *United States v. Wilson*, 828 F.

Supp. 2d 679, 685 (S.D.N.Y. 2011) (two months), *aff'd*, 523 Fed. App'x 30 (2d Cir. 2013). Accordingly, this factor too weighs against Defendant's motion.[1]

Finally, the Court rejects Defendant's challenge to the voluntariness of his plea on the grounds of ineffective assistance of counsel. As an initial matter, "[a] defendant's statements at his plea allocution 'carry a strong presumption of verity.'" *Rosa v. United States*, 170 F. Supp. 2d 388, 402 (S.D.N.Y. 2001) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74.

Defendant's sworn statements made in response to the Court's questions demonstrate that he was fully competent to enter a guilty plea and did so knowingly and voluntarily. Among other things, Defendant affirmed his level of education and that he had earned a GED; and that he was thinking clearly, was not under the influence of drugs or alcohol, and understood the proceeding. The Court specifically discussed with Defendant at the plea the rights Defendant was giving up by pleading guilty, and the consequences of pleading guilty. The Court explained, and the Defendant expressly confirmed his understanding of, the charges underlying Count One and Count Seventeen and the forfeiture allegation, as well as the sentencing consequences he would face, including the maximum penalties associated with Counts One and Seventeen. The Court specifically reviewed the stipulated guidelines range set forth in the Plea Agreement and Defendant confirmed that he had discussed the Plea Agreement with First Counsel, that he fully

---

[1] Where, as here, the defendant has failed to demonstrate sufficient grounds for permitting withdrawal, the Government need not show prejudice—the third *Doe* factor—when opposing a defendant's motion to withdraw his guilty plea. *United States v. Gonzalez*, 970 F.2d at 1100; *see also United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997) ("Only if the defendant makes such a showing [of valid grounds for relief] will the government be required to show prejudice, and then the court must exercise its discretion in balancing these competing concerns.").

understood the Plea Agreement, and he had not been induced or forced in any way to enter into the plea agreement. Defendant also swore that he was satisfied with First Counsel's representation of him.

Defendant's belated contention that he was not given adequate time or counsel to understand the process, or that First Counsel failed to review the Plea Agreement with him, is belied by his statements made under oath to the Court. His "bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States* v. *Hirsch*, 239 F.3d at 225. Defendant affirmed that he was given ample time and opportunity to consult with First Counsel, and during the plea he was given breaks—including one that lasted approximately fifteen minutes—to ensure that was so. Defendant's allegation that he was coerced into pleading guilty because First Counsel told Defendant during that fifteen-minute break that the Government had said it would "bury" Defendant if he proceeded to trial is unpersuasive because after that break, Defendant unequivocally swore that he was pleading guilty voluntarily and of his own free will and because he was in fact guilty. Moreover, given the Court's detailed description of the charges against Defendant, the consequences of pleading guilty, and his potential sentence exposure, as well as the Government's recitation of the elements of the crimes and proffer of what the evidence at trial would consist of, the Court cannot credit Defendant's conclusory allegation that any material part of the "process" or the Plea Agreement was insufficiently explained to him. *See Londono v. United States*, No. 11-CV-06773, 2012 WL 2376456, at *5 (S.D.N.Y. June 21, 2012) (purported failure of counsel to explain elements of charges to which the defendant pled held insufficient to establish ineffective assistance of counsel in light of Government's description of the elements at the plea hearing).

Defendant's allegation that the statements he read in Court were prepared solely by First Counsel is likewise contradicted by his sworn testimony. "There is nothing inappropriate about [the practice of using prepared scripts at a plea hearing] so long as the defendant agrees that the statement is accurate and voluntarily adopts the statement." *Ramos v. United States*, No. 03-CR-00724, 2010 WL 4922521, at *4 (S.D.N.Y. Nov. 24, 2010); *see also, Fernandez v. United States*, No. 12-CR-00445, 2016 WL 4735370, at *4 n.2 (S.D.N.Y. Sept. 12, 2016) (same and collecting cases). The Court confirmed that the statement was prepared together with First Counsel and that it was Defendant's words, not First Counsel's words. Further, Defendant answered all the Court's questions relating to the elements of Count One and Count Seventeen. Defendant's statements at his plea allocution "constitute a formidable barrier" to this motion. *Blackledge*, 431 U.S. at 74.

While it is understandable that the decision to plead guilty is emotional for a defendant, particularly with family present, it is not a basis to withdraw a plea. "[M]any criminal defendants accuse their attorneys of pressuring them to take a plea, and, faced with two unpleasant alternatives, many defendants will feel coerced in the lay sense of the word but that does not mean that they were coerced in the legal sense." *United States v. Hernandez*, No. 99-CR-0073, 2002 WL 31098505, *5 (S.D.N.Y. Sept. 18, 2002) (internal quotations omitted).

Finally, Defendant has never asserted unequivocally that absent First Counsel's alleged failings, he would have proceeded to trial. Accordingly, he has advanced no colorable claim that his plea was rendered involuntary as a result of First Counsel's ineffective assistance. *Doe*, 537 F.3d at 214. Simply put, Defendant's claims fail to establish that First Counsel's representation fell below an objective standard of reasonableness, or resulted in any prejudice to him.

## CONCLUSION

For the foregoing reasons, Defendant's motion to withdraw his guilty plea is DENIED. No evidentiary hearing is necessary where, as here, the defendant's plea allocution was clear and knowing, and the instant allegations merely contradict the record.

Sentencing will proceed as scheduled on January 31, 2023 at 11:00 a.m. in Courtroom 520 of the White Plains courthouse. As previously directed, Defendant's sentencing submission is due January 17, 2023, and the Government's submission is due January 24, 2023.

The Clerk of Court is respectfully directed to terminate the pending motion, Doc. 518.

**SO ORDERED.**

Dated: White Plains, New York
       January 17, 2023

_____
Philip M. Halpern
United States District Judge